**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

DESSIE MITCHESON; BRENDA LYNN
GEIGER, IESHA MARIE CRESPO; JESSICA
"CHARM" KILLINGS; ROSA ACOSTA;
JESSICA BURCIAGA; CARISSA ROSARIO;
ALANA CAMPOS; and JESSICA HINTON
a/k/a JESSA HINTON,

       *Plaintiffs*,

v.

AQUARIUS, INC. and ESTEBAN VANEGAS,

       *Defendants*.

Civil Action No.: 1:19-cv-

Plaintiffs DESSIE MITCHESON; BRENDA LYNN GEIGER, IESHA MARIE

CRESPO; JESSICA "CHARM" KILLINGS; ROSA ACOSTA; JESSICA BURCIAGA;

CARISSA ROSARIO; ALANA CAMPOS; and JESSICA HINTON a/k/a JESSA HINTON

(collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint

("Complaint") against defendants AQUARIUS, INC. d/b/a AQUARIUS NIGHTCLUB and

ESTEBAN VANEGAS (collectively "Defendants")  respectfully allege as follows:

## BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their nightclub,

Aquarius located in Springfield, Massachusetts ("Aquarius" or the "Club").

2.    As detailed below, Defendants' misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of

section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant AQUARIUS, INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 1217 State Street, Springfield, Massachusetts 01109.   AQUARIUS, INC. operates Aquarius, which is located at 1217 State Street, Springfield, Massachusetts 01109.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Springfield, Massachusetts is Defendants' principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in

Springfield, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Springfield, Massachusetts.

**PARTIES**

*Plaintiffs*

9.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

10.     Plaintiff Brenda Lynn Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

11.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Jessica "Charm" Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

15.     Plaintiff Carissa Rosario ("Rosario") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Jessica Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

18.     According to publicly available records, defendant AQUARIUS, INC. is formed under the laws of the state of Pennsylvania.  During times relevant to this action, AQUARIUS, INC. operated Aquarius in Springfield, Massachusetts.

19.     According to publicly available records, and upon information and belief, ESTEBAN VANEGAS, in his capacity as principal, owner and/or CEO of AQUARIUS, INC. maintained operational control over Aquarius, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

20.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Aquarius.

23.     In the case of every Plaintiff, such appearance was false.

24.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal

use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

25.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

26.     Dessie Mitcheson competed for Miss Pennsylvania USA at age18 and placed in the top ten.  Ms. Mitcheson soon became the Face of Playboy intimates, and the following year she became the Face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Ms. Mitcheson was also named Maxim magazine's Hometown Hottie, in which thousands of girls across the United States enter the yearly contest. That same year, Ms. Mitcheson was #100 on Maxim's Hot 100 list. She has graced the pages of multiple issues of Maxim, including a three page spread, two center folds, and landed the cover for the May 2014 Navy issue. Ms. Mitcheson's career as a TV personality, actress, and spokeswoman is booming. Ms. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Ms. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine. Ms. Mitcheson was the face of an International video game.

27.     That we know of, Mitcheson is depicted in the photos in Exhibit "A" to promote Aquarius on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Mitcheson employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

28.     Mitcheson has never been employed at Aquarius, has never been hired to endorse

Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Brenda Lynn Geiger is a hip-hop/eye candy model and actress who appeared, with 8-time Grammy nominee rapper Lil Wayne, in singer Keri Hilton's music video "Ms. Officer". Ms. Geiger, known as the Jersey Gem, is perhaps best known for her work for Glamour and an appearance on The Howard Stern Show in a Miss HTV March contest. Ms. Geiger has been featured in numerous men's magazines such as Show, Maxim and Raw. Ms. Geiger has been featured on numerous product campaigns, such as Primitive Clothing, where she has her own custom skateboard decks which originally sold out but are now back in production.

30.     That we know of, Geiger is depicted in the photos in Exhibit "B" to promote Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Geiger employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Geiger has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Iesha Marie Crespo is an American model and video star with combined social media followers of close to a million. Ms. Mariee has featured in a number of magazines and has the covers of *Models Latina* March 2015 and *Shock* magazine. Ms. Mariee has also appeared in a number of catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

33.     That we know of, Crespo is depicted in the photos in Exhibit "C" to promote Aquarius on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Crespo employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

34.     Crespo has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Jessica "Charm" Killings has been nothing short of stunning ever since she hit the modeling scene. Her striking appeal has her appearing in every major magazine such as SHOW, Blackmen, Straight Stuntin, Smooth, Mixed Magazine and many more. Ms. Killings has also appeared in various music videos as the lead talent which include, Far East Movement ft. Snoop Dogg's video "OMG", Slim Thug and Baby Bash's video "Swananana", Big Sean and Chris Brown's video "My Last", Bow Wow's video "Pretty Lady", and Jay Sean ft. Nicki Minaj's video "2012". Ms. Killings has 1.8 million followers on Instagram, and 53,084 followers in Twitter.

36.     That we know of, Killings is depicted in the photos in Exhibit "D" to promote Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Killings employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.     Killings has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Rosa Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Rosa moves to United States in 2006 where her career takes a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, tv programs and commercials and numerous music videos. She has 33,046 Facebook followers, over 1,600,000 Instagram followers, and 290,435 Twitter followers.

39.     That we know of, Acosta is depicted in the photo in Exhibit "E" to promote Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Acosta employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Acosta has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Jessica Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Ms. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a

photo shoot. After Ms. Burciaga's first photo shoot, she won Stuff Magazine's "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Ms. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Ms. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Ms. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, 44,667 Facebook likes, and 192,653 followers on Twitter.

42.    That we know of, Burciaga is depicted in the photos in Exhibit "F" to promote Aquarius on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Burciaga employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.    Burciaga has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.    Carissa Rosario is a model who has done commercials for Budweiser and Comcast. She is a spokesperson for Monster Energy Drinks, Protein World, and Budweiser. Carissa also has her own perfume company line. She is well known in the Social Media world, with 1,677,617 Facebook followers, over 1 million Instagram followers, and 46,073 Twitter followers.

45.    That we know of, Rosario is depicted in the photos in Exhibit "G" to promote

Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Rosario employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

46.     Rosario has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Alana Campos first appeared in Playboy in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Ms. Campos was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many Playboy videos, and not only has appeared as herself in the films The House Bunny (2008) and Miss March (2009) but also on episodes of such reality TV series as Kendra (2009), The Girls Next Door (2005) and Bridget's Sexiest Beaches (2009). Ms. Campos has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over fourteen million social media followers.

48.     That we know of, Campos is depicted in the photos in Exhibit "H" to promote Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Campos employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.     Campos has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue

to suffer, damages as a result of same.

50.     Jessica Hinton a/k/a Jessa Hinton was first introduced to the modeling industry at age fourteen when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on Baywatch and 7th Heaven by the age of sixteen. At the age of eighteen, she began working runway shows and doing print campaigns. In 2010, Ms. Hinton became the face of the Palms Hotel & Casino's 2010 ad campaign. She then expanded to TV personality roles having hosted for Victory Poker, and as an interview personality for the Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Ms. Hinton also gained spokes model roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World and ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images appeared on billboards, magazines, posters, and multiple forms of electronic media. Ms. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was recently named Creative Director for MAJR Media and was given part ownership for her role with the company. Ms. Hinton has also earned an elite status as a social media celebrity crossing well over the 1 million follower benchmark on Instagram, 2,871,000 followers on Facebook, and 246,098 followers on Twitter.

51.     That we know of, Campos is depicted in the photos in Exhibit "I" to promote Aquarius on its Instagram page. This Image was intentionally altered to make it appear that Hinton was employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or

affiliated with the Club.

52.     Hinton has never been employed at Aquarius, has never been hired to endorse Aquarius, has never been otherwise associated or affiliated with Aquarius, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

53.     Upon information and belief, Defendants operated, during the relevant time period, Aquarius, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

54.     Upon information and belief, and in furtherance of its promotion their promotion of Aquarius, Defendants own, operate and control Aquarius's social media accounts, including its Facebook, Twitter, and Instagram accounts.

55.     Defendants used Aquarius's Facebook, Twitter, and Instagram accounts to promote Aquarius, and to attract patrons thereto.

56.     Defendants did this for their own commercial and financial benefit.

57.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked employed at Aquarius, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

58.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Aquarius to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and

income.

59.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Aquarius and at no point have any of the Plaintiffs ever endorsed Aquarius, or otherwise been affiliated or associated with Aquarius.

60.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

61.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

62.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

63.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

64.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in

order to promote Aquarius by and through various marketing and promotional mediums including, without limitation, Aquarius's website, Twitter, Facebook, and Instagram.

65.     Defendants showcased Plaintiffs' Images on Aquarius's social media pages to create the false impression that Plaintiffs worked at Aquarius, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

66.     Defendants did so to attract clientele to Aquarius, promote Aquarius, and thereby generate revenue for Defendants.

67.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Aquarius.

68.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

69.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

70.     This is especially so insofar as each of Plaintiffs' Images have been associated with a nightclub, and the implication of Defendants' use of Plaintiffs' Images is that they are , endorse a nightclub, or are otherwise associated or affiliated with a nightclub.

71.     At no point were any of the Plaintiffs ever affiliated with Aquarius, or Defendants.

72.     Each of Plaintiffs' Images was used without her consent.

73.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

74.     No Defendant ever obtained, either directly or indirectly, permission to use any of

Plaintiffs' Images.

75.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Aquarius website, Twitter, Facebook, or Instagram accounts.

76.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

77.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

74.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

75.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

76.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Aquarius or agreed to appear in Aquarius's advertisements.

77.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

78.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Aquarius.

79.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

80.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

81.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

82.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

83.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

84.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

85.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

86.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Aquarius, or worked at, sponsored, or approved of Aquarius's goods, services or commercial activities.

87.     This was done to promote and attract clientele to Aquarius, and thereby generate revenue for the Defendants.

88.     Thus, this was done in furtherance of Defendants' commercial benefit.

89.     Despite the fact that Defendants were at all times aware that the Plaintiffs were

neither affiliated, connected or associated with Aquarius, nor worked at, sponsored, or approved of Aquarius's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Aquarius.

90.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

91.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

92.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
#### (Common Law Right of Privacy)

93.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

94.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

95.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

96.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Aquarius's website or related social media accounts as part of Defendants' advertising campaign.

97.     At all relevant times, Aquarius's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

98.     Aquarius's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

99.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

100.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

101.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

102.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Aquarius.

103.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

104.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

105.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

106.    Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

107.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

108.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

109.    Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

110.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

111.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Aquarius's website or related social media accounts as part of Defendants' advertising campaign.

112.    At all relevant times, Aquarius's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

113.    Aquarius's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

114.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to)

"pushed" down in time from immediate visibility.

115.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

116.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

117.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Aquarius.

118.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

119.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

120.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

121.    Defendants' actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

122.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of**
**Individual's Name, Portrait, or Picture)**

123.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

124. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

125. Within Massachusetts, Defendants' used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their nightclub.

126. No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants' to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

127. Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

128. As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

129. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

130. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

131. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

132. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

133.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

134.    In addition to the actual damages suffered by Plaintiffs based on Defendants'

violation of this statute and given Defendants' willful and knowing misappropriation and

publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## SIXTH CAUSE OF ACTION
### (Common Law Right of Publicity)

135.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

136.    As set forth hereon, each Plaintiff has and had at the time of Defendants'

misappropriation a commercial interest in her image, photo, persona and likeness.

137.    Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

138.    As set forth herein, Defendants used each Plaintiff's image and likeness for

commercial purposes by using same in Blush advertising.

139.    Defendants did so without any Plaintiff's consent, written or otherwise.

140.    Plaintiffs are further informed and believe and hereon allege that discovery will

prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

141.    Plaintiffs are informed and believe and hereon allege that Defendants'

republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or

promote a different product.

142.    Defendants were at all relevant times aware that they never received any

Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

143.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

144.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

145.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

146.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

147.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

148.     As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

149.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

150.    Defendants actions occurred primarily and substantially within Massachusetts.

151.    Defendants were at all times aware that no Plaintiff was employed at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

152.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

153.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

154.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, as provided for under this statute.

155.    In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

**EIGHTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

156.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

157.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

158.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

159.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

160.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

161.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

162.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

163.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

164.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Conversion)**

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right,

title and interest in their Images, and have property interests thereon.

156.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

158.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs worked at the Clubs, or endorsed the Clubs.

161.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

- 27 -

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

PLAINTIFFS,

By their Attorneys,

/s/ Paul Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@swdlawfirm.com

*and*

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*

Dated:  June 28, 2019